**Plaintiffs' Local Rule 56(a)1 Statement**

**Exhibit 3**

**Affidavit of David Kerschner**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Joseph A. Schiavone Corporation | : | Civil Action |
| Michael Schiavone, | : | No. 302 CV-1718 (RNC) |
| Plaintiffs | : | |
| v. | : | |
| Philip Kasden, | : | |
| Northeast Utilities Service Company, and | : | |
| Connecticut Light and Power Company, | : | |
| Defendants | : | December 10, 2004 |

**Affidavit of David R. Kerschner, CPG**

Personally appeared David R. Kerschner, CPG, who being duly sworn deposes and says:

1. That I am over the age of 18 years.

2. That I believe in the obligation of an Oath.

3. That the information stated herein is based on my personal knowledge and belief.

4. I am a hydrogeologist and principal in the firm of KU Resources, Inc.

5. I am a Certified Professional Geologist (CPG), of the American Institute of Professional Geologists, and am a registered professional geologist in the State of Florida, Pennsylvania, and Indiana.

6. I hold a Bachelor of Science, Environmental Science from Allegheny College (1979) and a

1

      Master of Science, Geology, from Kent State University (1981).

7. I have extensive experience in all aspects of environmental issues affecting currently operating and former industrial operations.

8. I have been responsible for developing and performing investigations and remediation activities at sites throughout the country, as well as for maintaining day-to-day environmental compliance and permitting activities at a number of operating locations.

9. Since entering the environmental consulting field I have gained experience that extends to over 50 industrial facilities and disposal sites throughout the United States.

10. As described in detail in my *Curriculum Vitae* (Appendix A), I am a hydrogeologist with over 20 years of experience in the investigation and remediation of industrial sites.

11. This experience includes the completion of multiple environmental investigation and remediation feasibility study projects under federal and/or various state regulatory programs.

12. As a principal of KU Resources, Inc., I have been responsible for managing regulatory and technical activities for large projects under the Resource Conservation and Recovery Act (RCRA), the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), and similar state statutes.

13. I entered the environmental industry in 1979 and have substantial experience in conducting and managing environmental investigations, feasibility studies, and remedial actions at hazardous waste sites.

14. I specialize in regulatory management, soil and groundwater investigation, and remediation program management at operating and former industrial facilities.

15. I have a particular specialty in coal tar chemical and wood preserving facilities.

16. In May 2002 I was retained by the Joseph A. Schiavone Corporation and Mr. Michael Schiavone (collectively referred to as "Schiavone") to investigate, design and implement a remedy on Lot 2 and Lot 2A in North Haven, Connecticut in response to the PCB contamination.

17. I was also retained for the purpose of negotiating the remedy design with the United States Environmental Protection Agency (U.S. EPA) and the Connecticut Department of Environmental Protection (DEP).

18. I have been retained by Schiavone to provide expert testimony relating to the Lot 2/2A PCB Area (the "Site") located at 300 Universal Drive in North Haven, Connecticut.

19. Michael Schiavone is the owner of the two adjoining parcels of real estate designated "Lot 2" and "Lot 2A."

20. In May 2002, during an inspection of the remedy on the southern border of Lot 2A, in the vicinity of the western end of the border between Lot 2 and Lot 2A, a project manager for the Connecticut DEP found some oil in the drainage swale; a sample was taken and analyzed - PCBs were found.

21. This led to additional sampling and investigation.

22. Through sampling of various environmental media, the Site has been found to be contaminated with polychlorinated biphenyls (PCBs).

23. The Site is not yet the subject of a consent order between the DEP or the US EPA and Schiavone.

24. Negotiations are still in progress with those agencies as to the nature of the remedy to be installed in response to the PCB contamination, though it appears, as of the date of this Affidavit that an agreement in principal has been reached.

25. Under my direction, KU Resources, Inc., prepared the *Remedial Investigation Report, Lot 2/2A PCB Area, 300 Universal Drive, North Haven, Connecticut*[1] ("RI") and the *Feasibility Study Report, Lot 2/2A PCB Area, 300 Universal Drive, North Haven, Connecticut* ("FS"), both dated May 2004, and prepared pursuant to the National Contingency Plan (NCP). (The RI is Attachment A to Appendix B of this Affidavit; the FS is Attachment B to Appendix B of this Affidavit.)

26. I prepared a document titled: Expert Report Prepared on Behalf of Michael Schiavone and the Joseph A. Schiavone Corporation (the "Report") in the lawsuit styled as *Joseph A. Schiavone Corporation, et al., v. Phil Kasden et al.*, Civil Action Number 302-CV-1718

---

[1] Various authors, various reports, and various documents refer to Lot 2 as 175 Universal Drive; some refer to Lot 2 as 300 Universal Drive, and some refer to Lot 2 as 250 Universal Drive North. All refer to the same parcel. The North Haven Tax Assessor renumbered properties on the Universal Drive North sometime in late 2003. By letter dated November 17, 2003 the Tax Assessor notified Mr. Michael Schiavone that the property formerly identified as 175 Universal Drive North would be changed to 250 Universal Drive North. Unfortunately, at different times in the process, the Tax Assessor had considered other numbers (such as 300) before finally selecting 250 Universal Drive North. Some remember those designations.

(RNC), dated May 28, 2004, a copy of which is attached to this Affidavit along with the various reports appended to that opinion. (Appendix B).

27. Since the submission of the RI and FS, I have developed a Conceptual Design for Lot 2/2A which was submitted to the agencies.

28. In order to present the opinions in the Report, I undertook a number of tasks. My opinions have been formed over a number of years based upon the following:

    a. Approximately 16 visits to the Site (during the weeks of October 22, November 12, and December 10, 2001; May 20, June 24, July 22, August 5, August 26, September 16, and November 18, 2002; April 7, April 21, and September 22, 2003; and April 19, August 9, and November 1, 2004) for the purpose of performing environmental investigations and evaluations of the Site;

    b. Numerous visits to the area immediately north of the Site, commencing in December 1996, for the purpose of performing environmental investigation and remediation activities not associated with the presence of PCBs at the Site, and the preparation and implementation of a Corrective Action Plan for that adjacent area;

    c. Meetings and telephone calls with representatives of the DEP and U.S. EPA Region I;

    d. Review of an Interpretation of Aerial Photographs Lot 2/2A PCB Area 175 Universal Drive, North Haven, Connecticut prepared for Kosloff & Harding and by James V.

5

           Hamel, Ph.D., P.E., P.G., dated February 2004, (see Appendix A to the RI);

    e.    Review of the deposition dated April 23, 2003, of Mr. Charles Sterling, past president of H. Kasden and Sons, Inc. and follow-up telephonic interview with him:

    f.    Review of the deposition dated April 25, 2003, of Mr. Philip Kasden, past vice president of H. Kasden & Sons, Inc.;

    g.    Review of notes of interviews with past employees of H. Kasden & Sons, Inc., taken by an investigator;

    h.    Consultation with members of my firm; and

    i.    The referenced documents are itemized in the "References" sections of the RI and the FS.

29.    Since the preparation of the Report, I have continued to work on the project; I have:

    a.    Prepared a design and implemented an upgrade to the interim measure that was installed on the Site in the Summer of 2002 to prevent the migration of PCBs to the Quinninpiac River Meadow Marsh which lies to the west of the Site;

    b.    Prepared a Conceptual Remedial Design, dated October 8, 2004, which was submitted to the DEP and the US EPA;

    c.    Have continued negotiations with the DEP and the US EPA on the elements of the Conceptual Remedial Design;

    d.    Supervised the maintenance of the interim remedy.

30. The Site is located near the Exit 9 interchange of Interstate 91. The area of interest covers approximately 12.5 acres, and occupies an entire parcel of land (Lot 2) and a portion of an adjacent parcel of land (Lot 2A) that are currently under the same ownership.

31. Maps and drawings of the Site are in the RI and FS.

32. Lot 2A, the parcel to the north, is also the location of a (separate) former creosote lagoon that has undergone remediation under DEP oversight for the creosote contamination on that site.

33. Lot 2, the southern parcel, is the former H. Kasden & Sons, Inc., scrap yard and the current location of a trucking terminal. (See Section 1.2.1, Site Description, of the RI for additional details.)

34. The history of the Site is discussed in Section 1.2.2 of the RI.

35. Previous environmental quality investigations at the Site are discussed in Section 1.2.3.

36. The Remedial Investigation undertaken at the Site is described in detail in Section 2.0 of the RI.

37. The physical characteristics of the study area are described in Section 3.0 of the RI.

38. The nature and extent of contamination is discussed in the Section 4.0 of the RI.

39. Contaminant fate and transport is discussed in Section 5.0 of the RI.

40. Section 6.0 of the RI presents human health and ecological risk assessments.

41. The summary and conclusions are contained in Section 7.0 of the RI.

42. The RI also includes a number of Tables, Figures, and Appendices.

43. Appendices A, J, K, and L are provided as paper documents in the RI.

44. Appendices B through I are included in PDF format on an enclosed CD-ROM, and include the data from 2,216+ soil samples taken at the Site.

45. The FS consists of six major sections, as well as supporting Tables, Figures, and an Appendix.

46. The FS was performed to develop, screen, and evaluate remedial alternatives for the Site.

47. The result of the comparative analysis of remedial alternatives in the FS evaluation is the recommendation of an appropriate remedial action for the Site.

48. A conceptual design for this recommended Site remedy is also included in the FS.

49. Negations with the agencies since the submission of the FS have resulted in a modification of the Site Remedy, which now includes the following elements:

   a. Establishment of an alternative Direct Exposure Criterion of 25 mg/kg for PCBs in soil;

   b. Establishment of an alternative Surface Water Protection Criterion of 48 µg/L for PCBs in groundwater;

   c. Excavation and off-site disposal of soil exceeding 50 mg/kg PCBs;

   d. Placement of a four-foot soil cover across the Site; and

   e. Enhancement of the existing interim measure for light non-aqueous phase liquid (LNAPL) containment and recovery, and installation of a passive LNAPL recovery

system in the southeastern portion of the Site.

    f.    Implementation of the recommended site-wide remedy also includes LNAPL monitoring and groundwater quality monitoring for a period of time.

50.    Based on my education, experience and the work that is reflected in the RI Report and FS Report, my opinion as disclosed in this litigation, I have the following opinions:

    a.    **Opinion 1:**  The Lot 2/2A PCB Area (Site) is a "facility" as defined in 42 USC §9601(9).

        i.    *Basis for the Opinion:*  Hazardous Substances, as defined in 42 USC §9601 (14)(B), include substances designated pursuant to section 42 USC §9602, consisting of PCBs, which have been found at the Site. PCBs are a listed chemical substance found in Table 302.4 of the National Contingency Plan (the "NCP") at 40 CFR §300 *et seq*. The Lot 2/2A PCB Area is a site or area where a hazardous substance has been deposited, disposed, or placed or otherwise came to be located. Analytical results for samples collected at the Site that support this Opinion are included in Appendices E through I of the RI.

    b.    **Opinion 2:**  There has been a release of the hazardous substance at the facility, the Lot 2/2A PCB Area (Site).

9

      i.    ***Basis for the Opinion:*** The Lot 2/2A PCB Area is a site or area where hazardous substances (PCBs) have been released. Analytical results for samples collected at the Site that support this Opinion are included in Appendices E through I of the RI.

c.    **Opinion 3:** Michael Schiavone and Joseph A. Schiavone Corporation have incurred costs responding to the release of PCBs at the Lot 2/2A PCB area.

      i.    ***Basis for the Opinion:*** KU Resources, Inc. has submitted monthly billings to Michael Schiavone and Joseph A. Schiavone Corporation for consulting and environmental remediation services associated with work related to the PCB investigation, removal and remediation. Copies of each of these invoices have been routinely provided to Connecticut Light & Power (CL&P) and Northeast Utilities Services Company (NUSCO).

d.    **Opinion 4:** The costs and response actions taken by Michael Schiavone and Joseph A. Schiavone Corporation conform to the NCP.

      i.    ***Basis for the Opinion:*** Based on my familiarity with the NPC, my twenty plus years in the environmental management and consulting field, the various U.S. EPA documents referenced in the RI and FS, the State of Connecticut DEP's Remediation Standard Regulations, and the applicable or relevant and appropriate requirements (ARARs) identified in Table 4-1 of the FS, the RI

    and the FS have been prepared in accordance with the NCP.

e.  **Opinion 5:** Transformer scrapping operations at the Site, and not the subsequent temporary storage of automobile shredder "fluff," are the source of the PCB contamination at the Lot 2/2A PCB Area.

  i.  ***Basis for the Opinion:*** As discussed in Section 7.1.1.1 (Nature and Extent of Contamination - PCBs) and Section 7.1.2 (Fate and Transport) of the RI, a comparison of areas of elevated PCB concentrations with potential scrap yard source areas/activities identified by the historical aerial photograph review performed by Dr. Hamel indicates that a number of the areas displaying elevated PCB concentrations coincide with scrap yard waste disposal areas. Conversely, high PCB concentrations are not associated with the former "fluff" pile area located along the southern perimeter of the Site, where Dr. Hamel did not note potential scrap yard source areas/activities. Additionally, Dr. Hamel noted evidence of road oiling activities and other scrap yard activities that could account for the widespread distribution of low concentrations of PCBs at the Site.

51. My Opinion as disclosed to NUSCO and CL&P and all its various attachments and appendices are attached as Appendix B to this Affidavit and incorporated by reference.

Dated at Allegheny County, State of Pennsylvania this 10th day of December, 2004.

DEPONENT:

*David R. Kerl* (signature)

David R. Kerschner, CPG

Subscribed and sworn to before me this __10__ day of __DEC__, 2004.

_____
Notary Public

Notarial Seal
Robert L. Gill, Notary Public
City of McKeesport, Allegheny County
My Commission Expires Sept. 20, 2005

Member, Pennsylvania Association of Notaries

**Affidavit of David Kerschner
(Exhibit 3 to LRS)**

**Appendix A Curriculum Vitae**

# David R. Kerschner, CPG

Mr. Kerschner is a hydrogeologist responsible for managing regulatory and technical activities for large projects under the Resource Conservation and Recovery Act (RCRA), Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), and similar state statutes. Mr. Kerschner entered the environmental industry in 1979 and has substantial experience in conducting and managing environmental investigations, feasibility studies, and remedial actions at hazardous waste sites. He specializes in regulatory management, soil and groundwater investigation, and remediation program management at operating and former industrial facilities; particularly coal tar chemical and wood preserving facilities.

As a former hydrogeologist and corporate environmental manager for a large wood preserving and coal tar chemical production company, Mr. Kerschner has extensive experience in all aspects of environmental issues affecting currently operating and former industrial operations. He was responsible for developing and performing investigations and remediation activities at the company's sites throughout the country, as well as for maintaining day-to-day environmental compliance and permitting activities at a number of operating locations. Since entering the environmental consulting field, he has continued to provide a variety of services to industry. Currently, his experience extends to over 50 industrial facilities and disposal sites throughout the United States.

## EDUCATION
MS, Geology, Kent State University, 1981
BS, Environmental Science, Allegheny College, 1979

## REGISTRATIONS
Certified Professional Geologist (CPG), American Institute of Professional Geologists (AIPG)
Registered Professional Geologist (PG), Florida, Pennsylvania, Indiana

## PROFESSIONAL AFFILIATIONS
American Institute of Professional Geologists
Association of Ground Water Scientists and Engineers
American Wood-Preservers' Association

## PROFESSIONAL EXPERIENCE
1979, **Geologist**, Moody & Associates, Meadville, PA
1979 – 1981, **Graduate Teaching/Research Assistant**, Kent State University, Kent, OH
1981 – 1985, **Hydrogeologist**, Koppers Co., Inc., Pittsburgh, PA
1985 – 1988, **Corporate Environmental Manager**, Treated Wood Products, Koppers Co., Inc., Pittsburgh, PA
1988 – 1989, **Hydrogeology Group Manager**, Keystone Environmental Resources, Inc., Pittsburgh, PA
1989 – 1991, **Corporate Environmental Manager**, Beazer East, Inc. (formerly Koppers Co., Inc.), Pittsburgh, PA
1991 – 1995, **Principal Hydrogeologist**, McLaren/Hart Environmental Engineering Corp., Pittsburgh, PA
1995 – 1997, **Principal Hydrogeologist**, Fluor Daniel GTI, Inc., Pittsburgh, PA
1997 – Present, **Principal**, KU Resources, Inc., Pittsburgh, PA

## REPRESENTATIVE PROJECT EXPERIENCE

- **Project Manager, Interim Measure Installation, Site Investigation, Focused Feasibility Study, and Remedial Construction, Former Wood Preserving Facility, Connecticut**: Conceptually developed and managed the design and installation of a subsurface containment/DNAPL extraction system to prevent migration of creosote product into a tidal wetlands area in Connecticut. Concurrently performed site-wide supplemental site investigation, human health and ecological risk characterization, and focused feasibility study. Recommended remedial action was approved by the State and constructed in 2000.

- **Technical Manager, Environmental Evaluation of a Coal Tar Production Facility, West Virginia**: Represented the current owner's interests in negotiations with a former owner regarding environmental issues at an active coal tar chemical production facility located adjacent to a coke plant. Reviewed site data and developed a conceptual hydrogeologic model explaining the occurrence of groundwater and coal tar residuals in extraction wells.

- **Project Manager, Site Investigation and Remediation, Former Wood Preserving Facility, Virginia**: Performed site characterization, risk assessment, and remedial planning activities and prepared a report recommending a remedial action approach under the State voluntary program. Assisted in the design of the in-situ land treatment of creosote in a portion of the area, and the conceptual design of a program to address creosote impacted sediments.

- **Project Manager, Focused Feasibility Study at a Former Wood Preserving and MGP Site, South Carolina**: Managed and served as primary author of a focused feasibility study that evaluated the ability to remediate a former manufactured gas plant (MGP) and wood preserving site following the construction of a major regional aquarium facility. The results suggested that the aquarium construction could be completed, while allowing the remediation of coal-tar chemicals in the groundwater beneath the property.

- **Litigation Support, Former Wood Preserving Facility, Mississippi**: Represented a corporate client in litigation matters. Current site owner's expert advocated a remedial action with costs exceeding $100 Million. Used risk science principles and technology experience to critique owner's proposed remedy, and prepared a Statement of Opinion regarding the critique.



*David R. Kerschner, CPG*
Page 2

- **Project Manager, RCRA Facility Investigation Work Plan at an Active Integrated Steel Mill, West Virginia:** Assisted in development of a strategic approach for a phased RCRA Corrective Action process at a large integrated steel mill, with initial focus on one of two former coking/coal tar chemical production areas at the facility. Managed the preparation of a RFI Work Plan and supporting documents. Performed preliminary investigation activities to develop an initial conceptual site model for planning purposes.

- **Expert Witness, Insurance Litigation for a Former Wood Preserving Site, Illinois:** Prepared Expert's Report on behalf of an industrial client seeking insurance cost recovery for environmental issues at a former wood preserving site in Illinois. Reviewed operational history and site data, and supervised demolition activities to assist in characterizing release potentials and history. Case was settled prior to trial.

- **Technical Manager, Review of Environmental Liabilities at Multiple Wood Preserving and Coal Tar Chemical Facilities, Nationwide:** Represented the current owner's interests in negotiations with a former owner regarding multiple operating facilities. Reviewed technical information and worked with other team members to develop an estimate of investigation/remediation liabilities/costs for these facilities.

- **Project Manager, Site Characterization and Decommissioning, Former Wood Preserving Facility, Pennsylvania:** Developed a work plan for the demolition of former process areas and a site-wide investigation of a former creosote wood preserving facility. Work plan implementation is pending.

- **Principal-in-Charge, CERCLA Activities at a Former Wood Preserving Site, Virginia:** Supervised the finalization of an Operable Unit RI Report. Prepared comments on Agency's proposed remedial plan on behalf of client. Prepared comments on resulting ROD. Supervised the preparation of RI Work Plan for another Operable Unit at the site.

- **Project Manager, Site Characterization at a Wood Preserving Facility, New York:** Served as Project Manager and performed field investigations in support of a facility transaction. Transaction was successfully completed. Subsequently assisted client in addressing RCRA Facility Assessment issues related to removing the facility from Interim Status. Performed soil sampling to evaluate integrity of process sumps, and submitted report of findings to regulatory agencies.

- **Principal-in-Charge, Interim Remedy at a Former Wood Preserving Site, Illinois:** Principal-in-Charge and Project Manager for a voluntary project involving design and construction of a hydraulic containment system for a former wood preserving plant in Illinois. Project focus was to prevent constituent migration toward a nearby municipal wellfield. Also managed and documented demolition activities at the facility.

- **Principal-in-Charge, Remedial Design at a Former Wood Preserving Superfund Site, Arkansas:** Principal-in-charge of a CERCLA remedial design project for a former wood preserving site. Site remediation consisted of the discrete excavation of shallow soil and a physical separation of fine-grained materials containing pentachlorophenol. Ultimate volume reduction during remedy implementation resulted in the off-site incineration of fines being cost-effective.

- **Compliance Adviser, Remedial Design at a Wood Preserving Superfund Site, Florida:** Served as regulatory compliance adviser for a CERCLA remedial design and construction management project at a wood preserving plant in EPA Region IV. Remedy included groundwater extraction and treatment, along with an evaluation of *in situ* biodegradation and soil washing.

- **Principal-in-Charge, RFI and CMS at a Textile Dyestuffs Plant:** Managed an RFI and corrective measures study (CMS) at a former textile dyestuffs plant in Pennsylvania. Field work consisted of soil gas sampling, electromagnetic surveys, soil boring and monitoring well installation, and groundwater sampling. Risk-based remediation goals were developed after performing a risk assessment. The recommended remedy, which was agreed to by EPA, included soil consolidation and capping, and groundwater extraction and treatment.

- **Project Manager, Engineering Evaluation/Cost Assessment at a Landfill Site:** Supervised the preparation of a Draft EE/CA Report and client response to Agency comments. Successfully advocated the use of a soil cover to address site issues, thereby avoiding the costs of a more extensive capping system.

- **Task Manager, Focused Feasibility Study at a Superfund Site:** Served as the Task Manager and primary author of a Focused Feasibility Study (FFS) for a former wire recycling facility in Region III. Under U.S. EPA lead, an incineration remedy had been selected and design activities implemented prior to involving the client as a PRP. A Focused Feasibility Study was prepared on behalf of the client to re-evaluate remedial options for "fluff" materials and associated soils. The FFS recommended a stabilization alternative, at a substantially lower cost than the incineration remedy. This alternative approach was ultimately approved, and implementation is pending.

- **Project Manager, RCRA Facility Investigation for an Electronics Manufacturer:** Managed the preparation and implementation of a RFI work plan at a former electronics components facility in New York. Also performed quarterly groundwater monitoring and focused remediation activities.

- **Principal-in-Charge, Technical Review, Strategy Development at a Manufacturing Facility:** Principal-in-charge of a technical review and strategy development group for the current owner of an aviation manufacturing facility in EPA Region VII. Site investigation and remediation activities were developed with the involvement of both current and former facility owners.


*KU* RESOURCES, INC

*David R. Kerschner, CPG*
Page 3

- **Project Manager, Environmental Compliance Review at a Wood Preserving Site, North Carolina:** Managed and served as reviewer for an integrated environmental and compliance review at an active wood preserving facility. Estimated potential costs associated with operational and remediation issues identified in the review, and helped the customer prepare a program to address these issues.

- **Project Manager, Environmental/Compliance Review of Wood Preserving Site:** Performed limited site characterization and a regulatory compliance review of a wood preserving facility in New Hampshire in support of a transaction. Transaction was successfully completed.

- **Corporate Environmental Manager, Multiple RCRA and CERCLA Sites:** Environmental manager for the development and implementation of investigations, risk assessments, feasibility studies, remedial designs, and remedial actions at more than 30 former or operating wood preserving facilities, pursuant to state Superfund, RCRA 3008(h), and/or CERCLA. Activities included project scoping, agency negotiations, consultant management, deliverable review, and project budget management.

- **Corporate Environmental Manager, Corporate Program Activities:** Worked with corporate management and counsel to develop various corporate environmental programs. Issues covered included commenting on proposed regulations, consistency with the NCP, financial assurance, cost recovery, and technical consistency. Sponsored and served as lead technical reviewer for an evaluation of available remediation technologies for wood preserving facilities.

- **Corporate Staff Hydrogeologist, Investigation and Monitoring Projects at Industrial Facilities:** Served as lead hydrogeologist for over 40 site investigation/remediation projects at multiple wood preserving and chemical production facilities. Prepared work plans, supervised field activities, interpreted data, prepared reports, and presented findings to corporate management and regulatory agencies.

- **Board Member, Remediation Technology Firm:** Served on the Board of Directors of a firm specializing in developing and implementing remediation technologies; particularly for use at wood preserving facilities.

## PUBLICATIONS AND PRESENTATIONS

Kerschner, D. October 1995. "Introduction to Hydrogeology and Contaminant Migration." In-house seminar for a major Pittsburgh law firm.

Kerschner, D. April 1995. "Comparison of RCRA Corrective Action to CERCLA." Executive Enterprises RCRA Corrective Action seminars.

Misquitta, N.S., J. Mack, and D. Kerschner. 1994. "Optimization of Groundwater Capture Zones Using an Intelligent Control Process." Association of Ground Water Scientists and Engineers Educational Program, "Groundwater Remediation Existing Technology and Future Direction."

Also served as corporate sponsor and technical reviewer for the preparation of "A Technology Overview of Existing and Emerging Environmental Solutions for Wood Treating Chemicals," National Environmental Technology Applications Corporation, December 1990.

KU RESOURCES, INC

**Affidavit of David Kerschner**
**(Exhibit 3 to LRS)**

**Appendix B Expert Report Prepared on Behalf of Michael Schiavone and the Joseph A. Schiavone Corporation**

**\* Appendix B is filed as a separate 3-ring bound document**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| Joseph A. Schiavone Corporation | : | Civil Action |
| Michael Schiavone, | : | No. 302 CV-1718 (RNC) |
| Plaintiffs | : | |
| v. | : | |
| Philip Kasden, | : | |
| Northeast Utilities Service Company, and | : | |
| Connecticut Light and Power Company, | : | **Notice of Manual Filing** |
| Defendants | : | December 13, 2004 |

  Please take notice that Plaintiffs' have manually filed Appendix B (Expert Report Prepared on Behalf of Michael Schiavone and the Joseph A. Schiavone Corporation) to the Affidavit of David Kerschner (Exhibit 3 to the LRS).

This document has not been filed electronically because:

[X] the document cannot be converted to an electronic format
[X] the electronic filing size of the document exceeds 1.5 mb
[ ] the document is filed under seal pursuant to the local rules of the court
[ ] the document is filed ex parte pursuant to court order, statue or regulation allowing ex parte submission [e.g., Motion for expert of Other Services Pursuant to 18 U.S.C. § 3006]
[ ] Plaintiff/Defendant is excused from electronically filing this document by court order.

The document has been manually served on all parties.

        Respectfully submitted,
        Joseph A. Schiavone Corporation, and
        Michael Schiavone
        Plaintiffs

        Nicholas J. Harding
        Federal Bar No. ct06387
        Kosloff & Harding
        Their Attorneys
        28 North Main Street
        West Hartford, CT 06107
        Tel: (860)521-7004
        Fax: (860) 521-3352